IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Association of Victims of Medical Malpractice, et al.**<br>Plaintiffs<br><br>    v.<br><br>**Manuel A. Torres-Nieves**<br>Defendant | Civil No. 12-1812 (DRD) |

## OPINION & ORDER

The Association of Victims of Medical Malpractice ("Association") and several of its members (collectively "Plaintiffs") are suing the electoral comptroller of Puerto Rico for actions he took in accordance with the Puerto Rico Political Campaign Financing Oversight Act.  See Act No. 222 of November 18, 2011 ("Law 222").  The suit originally sought compensatory and punitive damages, a declaratory judgment, preliminary and permanent injunctive relief, and an award for attorney fees and costs.  See Docket No. 1.

However, various determinations by the district court have closed the door on many of Plaintiffs' causes of action.  First, all of Plaintiffs' monetary claims—with the exception of the claim for attorney fees and costs—were dismissed on absolute-immunity grounds.  See Docket No. 57.  Second, Plaintiffs' calls for a preliminary injunction and/or a temporary restraining order were denied on mootness grounds.  See Docket No. 16.  Third, in a separate case in this district, the Hon. Juan M. Pérez-Giménez entered a permanent injunction pursuant to a settlement agreement involving the Puerto Rico Government that enjoins the enforcement of certain provisions of Law 222.  See Docket No. 87.  As such, Plaintiffs' remaining causes of action are for a declaratory judgment, a permanent injunction, and an award for attorney fees and costs.  Pending before the Court is a motion

for reconsideration filed by the defendant and a motion to amend the complaint filed by the plaintiffs.

## I.   FACTUAL OVERVIEW

The Association of Victims of Medical Malpractice ("Association") advocates for protecting the right of medical malpractice victims in Puerto Rico.  Prior to the November of 2012 elections, on or around September 15, 2012, the Association began presenting radio advertisements petitioning Luis Fortuño, who was the Governor of Puerto Rico at the time, to strike and rescind a regulation that effectively caps the amount of compensation that victims of medical malpractice could receive in a lawsuit.

On September 28, 2012, Defendant Manuel A. Torres-Nieves, in his capacity as Electoral Comptroller of the Commonwealth of Puerto Rico ("the Electoral Comptroller" or "Defendant"), issued a cease and desist order to the Puerto Rico media banning the publication of any announcements paid by the Association.  See Docket Nos. 1, and 8. The Electoral Comptroller claimed that his office had received three verified complaints alleging that the Association had breached Law 222.  Specifically, these verified complaints asserted that the Association infringed upon Articles 6.007, 6.009, 6.010 and 8.002 of Law 222 by having used funds for electoral purposes without having obtained the authorization of its members.

On that same day, the Electoral Comptroller issued an order directed towards the communications media in Puerto Rico to "cease and desist from publishing any announcement paid by the [Plaintiff] Association [...] until [they] comply with Law 222." (Docket No. 8-1, page 8).  The cease and desist order stated that the Office of the Electoral Comptroller of Puerto Rico performed a preliminary investigation and found no

evidence in their records of the Association's compliance with the requirements to sponsor electoral communications and that the Electoral Comptroller was empowered "to resort to the Court of First Instance to detain communications regarding elections that are financed without complying with the requirements of the Law and to prevent future violations." Consequently, the Association's campaign was off the air for six days before the Electoral Comptroller revoked the cease and desist order. The instant suit ensued.

Plaintiffs are composed of the Association itself along with nine of its individual members. Plaintiffs' complaint demands the following forms of relief:

> 1. Declare that the Defendants have violated Plaintiffs rights under First, Fifth, Fourteenth Amendments to the United States;
> 2. Declare unconstitutional Sections 6.007 through 6.010 of Law 222, as well as any other statutory provision that may run contrary to the Constitution for vagueness, unequal protection of the law, or failure to provide due process of law;
> 3. Grant preliminary and permanent injunctive relief enjoining the Defendants from ordering the media to cease and desist from running the [Association's] advertisements and from threatening the [Association] or the media with civil and criminal penalties;
> 4. Grant the Plaintiff[s] damages as it was clearly established as a matter of law that Defendant's conduct was unconstitutional;
> 5. Impose punitive damages against the Defendant for acting in willful disregard of the Constitution or federal laws;
> 6. Award attorney fees and costs pursuant to 42 U.S.C. § 1988. (emphasis provided).

See Docket No. 1, p. 8. Notwithstanding, several determinations rendered by the district court have taken many of these requests off the table. First, all monetary claims—with the exception of the claim for attorney fees and costs—were dismissed on absolute-immunity grounds. See Docket No. 57. Second, the calls for a preliminary injunction and/or a temporary restraining order were denied on mootness grounds. See Docket No. 16. Finally, and most critical, in a separate case in this district, the Hon. Juan M. Pérez-Giménez entered a permanent injunction pursuant to a settlement agreement involving the

Puerto Rico Government, which enjoins enforcement of certain provisions of Law 222.[1] Hence, much of the wind was taken from Plaintiff's sails.

The Court noted that once this permanent injunction was entered by Judge Pérez-Giménez, Defendant asserted by motion that the instant case was rendered moot. Docket No. 75. Consequently, this Court determined that the permanent injunction established in said case (<u>Sindicato Puertorriqueño de Trabajadores v. Fortuño</u>, 12-cv-1531 (PG)) effectively precluded Plaintiffs from challenging the newly unenforceable sections of Law 222 on mootness grounds. On the other hand, this Court also ruled that Plaintiffs' Law 222 legal challenges are more expansive than these three specific sections covered by the permanent injunction. Hence, as the case currently stands, Plaintiffs' remaining causes of action are related to the alleged unconstitutionality of the provisions of Law 222 that are not covered by the permanent injunction.

Defendant now moves the Court to reconsider its prior ruling and dispose of this case on mootness grounds in light of the permanent injunction. Docket No. 95. The foundation of Defendant's argument is that the Court's reading of the complaint was overly generous. On the other hand, not surprisingly, Plaintiffs are satisfied with the Court's interpretation of their complaint. Docket No. 94. Nevertheless, Plaintiffs have also filed a

---

[1] For the sake of clarity, the germane pronouncements of the aforementioned permanent injunction are enclosed below:

> . . . Thus, the defendants are hereby enjoined from enforcing the following provisions of the "Puerto Rico Political Campaign Financing Oversight Act," P.R. Laws Ann. tit. 16 § 621-634, known as Law 222 of November 18, 2011: 1) Section 6.010 in full; 2) the provision of Section 6.007 that states, "[i]n order for a juridical person to be able to establish a segregated committee or fund for these purposes, it must comply with the limitations and requirements set forth in Section 6.010 of this Chapter"; and 3) the provision of Section 6.009 that states "[t]o make contributions or incur in this type of expenditures, a juridical person must obtain authorization of the majority vote of its members, as provided in Section 6.010 of this Act." . . .

Docket No. 147 of case 12-cv-1531 (PG).

motion to amend the complaint, which, *inter alia*, specifically identifies the sections of Law 222 that should be deemed unconstitutional. Notwithstanding, it should be noted that the amended complaint also reinstates the previously dismissed damages claims, perhaps as a way to support a potential appeal or collaterally attack Judge Pérez-Giménez's permanent injunction.

## II. LEGAL ANALYSIS

The Court commences its analysis with Plaintiffs' amendment motion. Identifying the proper legal standard to evaluate this request is the first matter of inquiry. In this respect, the parties diverge on whether Rule 15(a)(2) or 16(b)(4) should steer the Court's discretion.[2] In any event, it is beyond debate that the "good cause" standard under Rule

---

[2] The Court encloses these provisions of Federal Rules of Civil Procedure 15 and 16 below for the sake of completeness:

> Rule 15. Amended and Supplemental Pleadings
> (a) Amendments Before Trial.
>> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>>> (A) 21 days after serving it, or
>>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>> (2) Other Amendments. **In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should <u>freely give</u> leave when justice so requires.** (emphasis provided).
> . . .
>
> Rule 16. Pretrial Conferences; Scheduling; Management
> . . .
> (b) Scheduling.
>> (1) Scheduling Order. Except in categories of actions exempted by local rule, the district judge--or a magistrate judge when authorized by local rule--must issue a scheduling order:
>>> (A) after receiving the parties' report under Rule 26(f); or
>>> (B) after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.
>> (2) Time to Issue. The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.
>> (3) Contents of the Order.

16(b)(4) is more rigorous than the "freely give[n]" standard under Rule 15(a)(2). Accordingly, both sides seek refuge in the more beneficial rule for their position.

In settling this initial dispute, the Court must resort to First Circuit case law for precedential guidance. Accordingly, the First Circuit has stated that " . . . requests for leave to amend are normally evaluated under Rule 15(a)'s leave freely given standard. When made in derogation of a scheduling order, however, Rule 16(b)'s more stringent good cause standard takes precedence." U.S. ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 194 (1st Cir. 2015). Thus, it would appear that the Court need only discern whether a scheduling order, which contains a deadline to amend the complaint, has been entered in the instance case. Alas, the circumstances of this case require deeper examination.

Indeed, the Court did enter a scheduling order on January 24, 2014, which includes a deadline to amend pleadings by February 28, 2014. See Docket No. 58, p. 9.[3] Moreover, the motion to amend the complaint was filed over a year after this deadline had expired. See Docket No. 95. Therefore, at first glance, it would appear that the difficult-to-meet "good cause" standard of Rule 16(b)(4) should apply. Though, the scheduling order in question was entered by the Court without Rule 16 authority:

> (A) Required Contents. The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.
> (B) Permitted Contents. The scheduling order may:
>   (i) modify the timing of disclosures under Rules 26(a) and 26(e)(1);
>   (ii) modify the extent of discovery;
>   (iii) provide for disclosure, discovery, or preservation of electronically stored information;
>   (iv) include any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502;
>   (v) direct that before moving for an order relating to discovery, the movant must request a conference with the court;
>   (vi) set dates for pretrial conferences and for trial; and
>   (vii) include other appropriate matters.
> (4) Modifying a Schedule. **A schedule may be modified only for good cause and with the judge's consent.**  (emphasis provided).

---

[3] Of course, a "complaint" is a "pleading" under Federal Rule of Civil Procedure 7(a)(1).

> . . .
>> (b) Scheduling.
>>> (1) Scheduling Order. . . . the district judge . . . must issue a scheduling order:
>>>> (A) **after** receiving the parties' report under Rule 26(f); or
>>>> (B) **after** consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.  (emphasis provided).
> . . .

Fed. R. Civ. P. 16.  The Court, regrettably, notes that neither of these two preliminary events has occurred.  Hence, the Court, improvidently, entered the scheduling order *before* receiving "the parties' report under Rule 26(f)" and *before* "consulting with the parties' attorneys . . . at a scheduling conference."  In fact, even as it stands today, the Court lacks Rule 16 authority to enter a scheduling order as these two events have still yet to transpire.  In light of this unfortunate procedural irregularity, the Court must find that the scheduling order is void.  Therefore, the "good cause" standard of Rule 16(b)(4)—which applies when leave to amend is sought "in derogation of a scheduling order"—cannot apply to the instant fact pattern.  As such, the Court must resort to the usual "freely give[n]" standard of Rule 15(a)(2).

The Supreme Court has honored the amendment-friendly language of Rule 15(a)(2):

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962).  However, it would seem that prejudice to the opposing party is the most critical factor in the "freely give[n]" calculus.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971); United States v. Hougham, 364 U.S. 310 (1960); § 1487 Amendments With Leave of Court—When Leave to Amend May Be Denied, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) (" . . . if the court is persuaded that no prejudice will accrue, the amendment should be allowed.").  The First Circuit has also emphasized that bad faith of the moving party also plays a significant role in the amendment analysis.  O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir. 2004) (" . . . Rule 15(a)'s 'freely given' standard . . . focuses mostly on the bad faith of the moving party and the prejudice to the opposing party.").

      Scrutinizing the instant fact pattern through the Rule 15(a)(2) lens requires that the Court allow the amendment.  This determination is reached after cautiously perusing the entire docket while keeping the "freely give[n]" factors at the forefront.  However, let it be clear: the Court will not allow the amended complaint to resurrect previously dismissed claims.  A contrary determination would unfairly allow Plaintiffs to get a second bite at the apple to prevail on claims that were previously deemed contrary to law.  As such, all claims for damages, for a temporary restraining order, for a preliminary injunction, and related to Defendant's enforcement of provisions of Law 222 that are covered by Judge Pérez-Giménez's permanent injunction would remain dismissed even if they are restated in the amended complaint.  It is of monumental importance to note that the Court's analysis is strictly predicated on this caveat.

      At the outset, there can be no doubt that there is a significant lack of diligence on the part of the moving party.  Essentially, Plaintiffs claim that the amendment comes in

response to a ruling entered by Defendant—in his capacity as the electoral comptroller of Puerto Rico—on March 25, 2013. However, Plaintiffs' motion to amend was filed over two years later. Notwithstanding, the Court notes that the proceedings before Judge Pérez-Giménez—which Defendant believed would dispose of the instant case—was still pending during much of this time.[4] Further, once the case before Judge Pérez-Giménez was ultimately settled, multiple rounds of briefing ensued with respect to whether or not the instant case was rendered moot.

Notwithstanding Plaintiffs' lack of diligence, it must be said that the proposed amendment would not unduly prejudice Defendant. The strongest argument for finding prejudice is that the amended complaint attempts to reinstate previously dismissed claims for damages. However, as previously alluded to, the Court shall not authorize the previously dismissed claims contained in the amended complaint to be resuscitated so easily. In light of this Court's clarification, this otherwise powerful argument must lose its thrust. Moving on, the Court also notes that, despite the duration of this case, discovery is still yet to occur. As such, Defendant would not be placed in a position to have to wastefully incur in duplicitous discovery expenses. Further, despite Plaintiffs' significant lack of diligence, the Court has not been persuaded that Plaintiffs' amendment request is predicated on any bad faith as the parties were, after all, awaiting the prospect of a settlement in Judge Pérez-Giménez's case for much of this time.

Thus, considering the myriad of factors traditionally associated with Rule 15(a)(2), the Court hereby allows Plaintiff to amend the complaint. This is mainly due to the lack of

---

[4] In fact, Defendant has caused much of the delay in this case. See Docket Nos. 62 ("Emergency motion to Continue" based on the settlement negotiations in Judge Pérez-Giménez's case), 63 (requesting additional time to complete the settlement negotiations in Judge Pérez-Giménez's case), 68 (same), 70 (same), and 72 (same).

undue prejudice to Defendant and the absence of bad faith on the part of Plaintiffs. See O'Connell, 357 F.3d at 155 (" . . . Rule 15(a)'s 'freely given' standard . . . focuses mostly on the bad faith of the moving party and the prejudice to the opposing party."). Hence, Plaintiffs' motion to amend the complaint at Docket No. 95 is hereby granted.

This ruling eliminates the need for the Court to decide Defendant's motion for reconsideration. See Docket No. 87. This is due to the fact that the motion is aimed at the Court's liberal interpretation of Plaintiffs' initial complaint. However, once the Court allows a plaintiff to file an amended complaint, the original complaint is history. See § 1476 Effect of an Amended Pleading, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading." (collecting cases)). Therefore, Defendant's motion for reconsideration must be deemed moot.

### III.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion to amend the complaint at Docket No. 95 is hereby **GRANTED** within the limits stated herein and Defendant's motion for reconsideration is deemed **MOOT**. Notwithstanding, all previously dismissed claims contained in the initial complaint that have been reintroduced in the amended complaint are hereby dismissed for the same reasons elucidated by this Court in various orders rendered throughout this litigation. See Docket Nos. 16, 57, and 87. Therefore, all of the following claims remain dismissed: Plaintiffs' monetary claims—with the exception of the claim for attorney fees and costs—on absolute-immunity grounds, Plaintiffs' calls for a preliminary injunction and/or a temporary restraining order on mootness grounds, and all

claims that are based on the enforcement of the particular sections of Law 222 that contradict the permanent injunction entered by the Hon. Juan M. Pérez-Giménez in case <u>Sindicato Puertorriqueño de Trabajadores v. Fortuño</u>, 12-cv-1531 (PG).  Hence, Plaintiffs must amend the complaint to eliminate all the excess baggage within the next ten (10) days.  Subsequently, Defendant will then have ten (10) days to answer the complaint.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of March, 2016.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge