IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Association of Victims of Medical Malpractice, et al.** <br> Plaintiffs <br><br> v. <br><br> **Manuel A. Torres-Nieves** <br> Defendant | Civil No. 12-1812 (DRD) |

**OPINION & ORDER**

The Association of Victims of Medical Malpractice ("Association") and several of its members (collectively "Plaintiffs") are suing the electoral comptroller of Puerto Rico ("Defendant") for actions he took in accordance with the Puerto Rico Political Campaign Financing Oversight Act.  *See* Act No. 222 of November 18, 2011 ("Law 222").  The suit originally sought compensatory and punitive damages, a declaratory judgment, preliminary and permanent injunctive relief, and an award for attorney fees and costs.  *See* Docket No. 1.

However, the Court specifically dismissed all of Plaintiffs' monetary claims—with the exception of the claim for attorney fees and costs—on absolute-immunity grounds or, in the alternative, on Defendant's entitlement to qualified immunity.  *See* Docket No. 57. Consequently, Plaintiffs have filed what could be described as a motion for reconsideration of the dismissal of these damages claims.  This motion has two prongs: (1) Defendant purportedly waived all immunity defenses by not including them as affirmative defenses in the answer to the complaint and (2) the Court erred in dismissing the damages claims on immunity grounds.  For the reasons set forth below, the Court hereby **DENIES** Plaintiffs' motion.

## I.    FACTUAL OVERVIEW

The Association of Victims of Medical Malpractice ("Association") advocates for protecting the rights of medical malpractice victims in Puerto Rico.  Prior to the November of 2012 elections, on or around September 15, 2012, the Association began presenting radio advertisements petitioning Luis Fortuño, who was the Governor of Puerto Rico at the time, to strike and rescind a regulation that effectively caps the amount of compensation that victims of medical malpractice could receive in a lawsuit.

On September 28, 2012, Defendant, in his capacity as Electoral Comptroller of the Commonwealth of Puerto Rico, issued a cease and desist order to the Puerto Rico media banning the publication of any announcements paid by the Association.  *See* Docket Nos. 1 and 8.  Defendant claimed that his office had received three verified complaints alleging that the Association had breached Law 222.   Specifically, these verified complaints asserted that the Association infringed upon Articles 6.007, 6.009, 6.010, and 8.002 of Law 222 by having used funds for electoral purposes without having obtained the authorization of its members.

On that same day, Defendant issued an order directed towards the communications media in Puerto Rico to "cease and desist from publishing any announcement paid by the [Plaintiff] Association . . . until [they] comply with Law 222."  Docket No. 8-1 at p. 8.  The cease and desist order stated that the Office of the Electoral Comptroller of Puerto Rico performed a preliminary investigation and found no evidence in their records of the Association's compliance with the requirements to sponsor electoral communications and that Defendant was empowered "to resort to the Court of First Instance to detain communications regarding elections that are financed without complying with the

requirements of the Law and to prevent future violations." Consequently, the Association's campaign was off the air for six days before Defendant revoked the cease and desist order. Plaintiff proceeded to file the original complaint in this case.[1]

Faced with a motion to dismiss on absolute-immunity and/or qualified-immunity grounds, the Court, on September 30, 2013, dismissed all claims for monetary damages, with the exception of claims for attorney fees and costs. *See* Docket No. 57. Now, two and a half years later, Plaintiffs ask the Court to reconsider. *See* Docket No. 135.

## II.    LEGAL ANALYSIS

The motion contains two legal arguments: (1) all immunity defenses should be deemed waived because Defendant failed to include them as affirmative defenses in the answer to the original complaint and (2) Defendant's actions are not cloaked by absolute-immunity protection. Both of these arguments are addressed in seriatim fashion.

### A. Retroactive Waiver?

*Prior* to answering the original complaint, Defendant properly filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Docket No. 23. Of the many arguments to be found in this motion is the contention that Defendant is entitled to quasi-judicial, absolute, and/or qualified immunity. *See Id.* at pp. 22-25. In the end, persuaded by the arguments contained in said motion, the Court dismissed all monetary damages claims—except for those that were for attorney fees and costs—by way of absolute immunity or, in the alternative, due to qualified immunity. *See* Docket No. 57 at p. 18. However, as previously adverted to, Plaintiffs' original complaint sought more than monetary relief. As such, notwithstanding this Court's ruling, the case continued.

---

[1] The Court notes that Plaintiffs filed a recent amended complaint. However, the waiver argument in this case is based on the alleged failures of the answer to this original complaint.

As Plaintiffs still had viable causes of action pending, Defendant *subsequently* answered the original complaint without asserting any affirmative defense on immunity grounds.  *See* Docket No. 59.  Now, some eighteen months later, Plaintiffs seem to equate the failure to include these immunity defenses in the answer as having voided both the Defendant's pre-answer motion to dismiss and the Court's pre-answer opinion and order that granted this portion of the motion.  However, this revisionist argument must fail for obvious reasons.

A Rule 12(b)(6) motion to dismiss must be filed "before pleading."  Fed. R. Civ. P. 12(b).  Accordingly, Defendants' filing of a pre-answer motion to dismiss is in accordance with this provision.  Once the Court granted the immunity portion of the motion and dismissed the monetary damages claims, the text of these claims on the complaint serve as little more than a memorial.  Therefore, a defendant no longer need file affirmative defenses against claims that have effectively been rendered as dead letter.  A contrary rule would be hyper-technical, illogical, and inconsistent with the pragmatic approach of modern civil procedure.  Further, not surprisingly, Plaintiffs fail to usher in any applicable case law in their favor.

## B.  Reexamining Absolute Immunity

Plaintiffs next contend that the Court's dismissal of the damages claims on immunity grounds was erroneous.[2]  First, according to Plaintiffs, none of Defendant's actions that give rise to this case were ever taken in a judicial capacity.  Second, Plaintiffs' supposed unlawful conduct was never clearly established.  And third, due to the fact that discovery has yet to take place, Plaintiffs state that they are unable to effectively challenge this

---

[2] The Court notes that these monetary damages claims were reincorporated in the newly amended complaint.  As such, the Court is technically dismissing these claims a second time while affirming their original dismissal.

Court's immunity ruling.  The difficulty before the Court is that the motion offers little more than these conclusory assertions.  The Court is left to pick up the pieces of a procedural vehicle (a virtual motion for reconsideration) that crashed and burned before it ever took flight.  However, while this reconsideration motion may be summarily denied without further ado based on its conclusory nature, the Court shall, in the interests of justice, attempt to expand on Plaintiffs' argument before entering a ruling.  In doing so, the Court heavily relies on its prior analysis at Docket No. 57.

The First Circuit has long recognized that the doctrine of quasi-judicial immunity affords absolute immunity to government officials performing tasks "that are inextricably intertwined with the judicial function." *Nystedt v. Nigro*, 700 F.3d 25, 30 (1st Cir. 2012) (internal citations omitted). The underlying rationale for providing absolute immunity to a government official is that full exemption from liability is required in order for an individual to effectively partake in an adjudicative role. *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 662 (1st Cir. 2010) (citing *Butz v. Economou*, 438 U.S. 478, 508 (1978)).

The First Circuit has outlined a functional approach to determine whether absolute immunity is available.  *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 41 (1st Cir. 2005).  This functional approach requires courts to evaluate and analyze three questions, each designed to determine how closely analogous the adjudicatory experience of the official is to that of a judge, when determining whether an official has engaged in quasi-judicial functions.  *Id.*  The relevant questions are: (1) whether the government official performs a traditional "adjudicatory" function, by deciding facts, applying applicable law, and resolving disputes on the merits; (2) whether the public official decides cases that are sufficiently

controversial that would subject him, in the absence of absolute immunity, to numerous monetary damage actions; and (3) whether the official, like a judge, adjudicates disputes with safeguards designed to protect the affected party's rights. *Id.*

The Court determines that the electoral comptroller's actions are "intimately associated" with the judicial function, thereby affording him the blanket of absolute immunity. *See Nystedt*, 700 F.3d at 31 (defining judicial function as "the adjudication of disputes between parties"). First, the electoral comptroller is tasked with resolving grievances and investigating alleged electoral violations filed with the Office of the Electoral Comptroller, performing tasks functionally comparable to those of judges. Like a judge, the electoral comptroller may order parties to show cause and to present evidence in order to substantiate their claims. Before making a final ruling, the electoral comptroller must review the applicable law and apply said law to the facts on the record. If the electoral comptroller finds that a violation occurred, he may penalize the violating party by, inter alia, issuing administrative fines.

The second inquiry is deciding whether a party has violated Puerto Rico electoral law is sufficiently controversial that, in the absence of absolute immunity, the electoral comptroller would be subject to numerous damages actions. It is undisputed that the electoral comptroller would be unable to adequately fulfill his duties as adjudicator if he was not cloaked with the blanket of absolute immunity afforded to government officials in similar quasi-judicial capacities. *See Tobin for Governor v. Illinois State Bd. of Electorals*, 268 F.3d 517 (7th Cir. 2001) (holding that the members of the Illinois State Board of Electorals were entitled to absolute immunity).

Third, the rights of parties involved in disputes that are adjudicated by the electoral comptroller are sufficiently protected by the extensive appellate procedures set out in Chapter 12 of Act 222.  Under Act 222, all of the electoral comptroller's determinations can be appealed either to the Puerto Rico Court of First Instance or Court of Appeals.

Having established that these factors clearly depict entitlement to absolute immunity, the Court now trains its focus on the specifics of Plaintiffs' arguments.  Plaintiffs seem to argue that that Defendant's actions were not taken in a judicial capacity because he somehow exceeded the bounds of the authority granted to him under the law.  Plaintiffs very colorfully state that Defendant "did not act as a judge, but strictly as a State Censor" in censoring Plaintiffs' ads without holding any judicial proceeding.   The problem for Plaintiffs is that "[t]he Supreme Court has squarely held that absolute judicial immunity is ineffaceable even in the presence of 'grave procedural errors.'"  *Nystedt*, 700 F.3d at 32 (citing *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 357, 20 L.Ed. 646 (1871); *New Eng. Cleaning Servs., Inc. v. Am. Arbit. Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999)).   Thus, even when examining Defendant's actions with Plaintiffs' rose-colored glasses, the action amounts to no more than a "grave procedural error."  Accordingly, this argument is no obstacle for Defendant's invocation of immunity.

Next, Defendant is supposedly not entitled to absolute immunity because the illegality of Plaintiffs' conduct was never clearly established.  Clearly, a rule of this nature would interfere with the ability of judicial (or quasi-judicial) officers to properly carry out their functions.  *See, e.g., Id.* at 30 (the absolute immunity doctrine "is rooted in the wise idea that those who perform adjudicative functions 'require a full exemption from liability.'"

(citing *Butz*, 438 U.S. at 508).  The Court is unpersuaded, especially when the argument is unaccompanied by any applicable case law.

Finally, Plaintiffs seem to blame any potential shortcomings of their arguments on the fact that discovery in this case is yet to take place.  However, Plaintiffs have failed to provide any compelling argument on this point.  Immunity doctrines are designed to avoid being bullied into discovery and forced to settle feeble cases.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("the threat of discovery expense [would] push cost-conscious defendants to settle even anemic cases").  While there are circumstances where the Court should be cautious before dismissing claims when the material information is in possession of the opposing party, this is not such a case.  *See Garcia-Catalan v. United States*, 734 F.3d 100, 101 (1st Cir. 2013); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012); *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 16 (1st Cir. 2011); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009).  By analogy, "discovery [cannot] reasonably be expected to fill any holes" in Plaintiffs' attempt at rebuffing the applicability of absolute immunity.  *Garcia-Catalan*, 734 F.3d at 104-05.

Therefore, the Court reaffirms under these circumstances that Defendant is entitled to absolute immunity and is thus shielded from the monetary damages claims.  Accordingly, the Court reiterates that Plaintiffs' claims for monetary relief were and are properly dismissed.

### III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion at Docket No. 135 is hereby **DENIED**.  The Court's dismissal of monetary damages claims on absolute immunity grounds is not voided by the fact that Defendant did not reassert the defense in the answer

to the original complaint.  Further, the Court simultaneously reaffirms the first dismissal of these claims and dismisses these claims for a second time.

Defendant is to answer the amended complaint at Docket No. 140 on or before September 2, 2016.  The Court shall hold a scheduling conference and a final settlement conference on September 8, 2016, at 5:00 p.m.  A trial is hereby scheduled for September 26, 2016.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of August, 2016.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge